**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT J. SIGILLITO** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 24-2556** |
| **AUGUSTAR LIFE ASSURANCE CORPORATION** | **SECTION: "G"(1)** |

**ORDER AND REASONS**

Before the Court are cross Motions for Summary Judgment[1] filed by Plaintiff Robert J. Sigillito ("Plaintiff") and Defendant Augustar Life Assurance Corporation ("Augustar"). Plaintiff alleges that Augustar breached a disability insurance policy by failing to pay Plaintiff Total Disability benefits after an illness caused Plaintiff to cease his employment as an emergency room physician.[2] Augustar contends that Plaintiff's continued work as a Chief Deputy Coroner foreclosed a finding of Total Disability but allowed for Residual Disability payment under the policy.[3] For the reasons stated herein, the Court finds that there are genuine issues of material fact in dispute. Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court denies both motions.

---

[1] Rec. Doc. 38; Rec. Doc. 40.

[2] Rec. Doc. 1-2; Rec. Doc. 38.

[3] Rec. Doc. 40.

## I. Background[4]

On September 13, 2024, Plaintiff filed a complaint in the 22nd Judicial District Court for the Parish of St. Tammany.[5] Plaintiff was a board-certified emergency room physician.[6] On October 21, 1996, Plaintiff obtained a disability benefits insurance policy from Augustar, bearing policy number H6182337.[7] The policy provides for a $3,500 (increased to $8,000 and adjusted for inflation) monthly disability income benefit in the event that Plaintiff becomes totally disabled.[8]

In the late 2000s, Plaintiff began to suffer from several degenerative conditions, and he was eventually diagnosed with Hashimoto's Disease, among other things, which slowly became a disabling condition affecting Plaintiff's eyesight and resulting in double vision.[9] The condition caused Plaintiff to limit his practice as an emergency room physician while he continued to seek effective treatment.[10] On August 16, 2021, Plaintiff took a job as an Assistant Parish Coroner, and thereafter transitioned into the role of Chief Deputy Coroner.[11] Plaintiff stopped working as an emergency room physician as of July 25, 2022.[12]

[4] Because Plaintiff's petition does not include a detailed timeline of the relevant events, the Court relies in part on Augustar's Statement of Uncontested Material Facts to establish the chronology. Plaintiff has not disputed those facts, and the Court therefore treats them as undisputed for the purposes of the present motions, to the extent supported by the record.

[5] Rec. Doc. 1-2.

[6] Rec. Doc. 1-2.

[7] *Id.* at 4; Rec. Doc. 40-2 at 1. Augustar was formerly known as Ohio National Life Assurance Corporation.

[8] Rec. Doc. 1-2 at 4.

[9] Rec. Doc. 1-2 at 4. Plaintiff's Motion for Summary Judgment indicates that Plaintiff was diagnosed with Hashimoto's Disease in 2011, and his vision was confirmed as uncorrectable in 2014. This fact is undisputed.

[10] *Id.*

[11] Rec. Doc. 40-2 at 5; Rec. Doc. 40-1 at 1.

[12] Rec. Doc. 40-2 at 7.

On February 2, 2024, Augustar received first notice of Plaintiff's disability claim under the policy.[13] Plaintiff left the coroner's office on March 24, 2024, because a new coroner was elected.[14] By letter dated July 26, 2024, Augustar informed Plaintiff that he did not satisfy the policy's definition of Total Disability because he continued to perform some of the substantial and material duties of his "Regular Occupation" as a Chief Deputy Coroner beyond July 25, 2022.[15] However, Augustar determined that Plaintiff was eligible for Residual Disability benefits because he was impaired from working as an emergency room physician.[16]

The complaint explains that Augustar issued a payment in the amount of $80,817.33.[17] Plaintiff did not receive any subsequent benefit payments.[18] The complaint alleges that Augustar wrongfully concluded that Plaintiff voluntarily left his employment at the coroner's office even though this impression was corrected in writing and by phone call to the adjuster.[19] The complaint alleges that Augustar's actions violated Louisiana Revised Statutes §§ 22:1821 and 22:1973.[20] The complaint further alleges that Augustar acted in bad faith before and after the payment was made.[21]

---

[13] *Id.* at 8.

[14] *Id.*

[15] *Id.* at 13.

[16] *Id.*

[17] Rec. Doc. 1-2 at 4.

[18] *Id.*

[19] *Id.* at 5.

[20] *Id.* at 3.

[21] *Id.*

On October 25, 2024, Defendant removed the matter to this Court.[22] On February 13, 2026, Plaintiff filed a Motion for Summary Judgment.[23] On March 3, 2026, Augustar filed a Motion for Summary Judgment.[24] On March 10, 2026, Plaintiff filed an opposition to Augustar's motion.[25] On March 10, 2026, Augustar filed an opposition to Plaintiff's motion.[26] On March 16, 2026, Augustar filed a reply memorandum in further support of its motion.[27]

## II. Parties' Arguments

### *A. Plaintiff's Motion for Summary Judgment*

#### 1. Plaintiff's Arguments in Support of the Motion

Plaintiff contends that on April 2, 2024, he provided the requested medical records and his past earnings which placed Augustar on "notice of sufficient proof of loss" under Louisiana law.[28] Plaintiff argues that Augustar unilaterally declared that the date of Plaintiff's actual disability was the date that benefits should begin and used that date to insist that Plaintiff had acquired a second "present occupation" by then.[29] Plaintiff avers that the true date of disability cannot be pinpointed because the condition is a progressive reduction in vision.[30] Plaintiff argues that Augustar incorrectly determined that Plaintiff ended his occupation as a coroner voluntarily.[31]

[22] Rec. Doc. 1.

[23] Rec. Doc. 38.

[24] Rec. Doc. 40.

[25] Rec. Doc. 42.

[26] Rec. Doc. 43.

[27] Rec. Doc. 44.

[28] Rec. Doc. 38-2 at 4.

[29] *Id.* at 7.

[30] *Id.*

[31] *Id.* at 8.

Plaintiff contends that Louisiana Revised Statute § 22:990 is applicable here, which establishes that "[t]otal disability may be defined in relation to the inability of the person to perform duties but shall not be based solely upon an individual's inability to … perform 'any occupation whatsoever,' 'any occupational duty,' or 'any and every duty of his occupation.'"[32]

Plaintiff avers that this case is akin to *Scott v. Unum Life Insurance Company*,[33] wherein the Louisiana Second Circuit Court of Appeal affirmed the trial court's ruling that the insurance policy at issue violated Louisiana Revised Statues §§ 22:990 and 22:880.[34] Specifically, the appellate court held that the policy's definition of total disability was too restrictive because "it increase[d] the number of potential occupations available to the insured, making the designation of disability more difficult to attain under the policy."[35] Plaintiff contends that Louisiana courts have consistently found that an insured was totally disabled even though the insured could continue to work in another capacity.[36] Plaintiff argues that under Louisiana law, an insured with a progressively worsening condition may meet the definition of "totally disabled" even if the insured attempts to mitigate his claim by continuing to work.[37]

Plaintiff avers that Augustar incorrectly interprets "present occupation" in a manner that: (1) narrowed the occupation to any undefined employment; (2) failed to define any period of time worked or applied a undefined time period; (3) disregarded the policy and caselaw; and (4) disregarded the statutory requirement that his occupation provide him with substantially the same

[32] *Id.* at 9–10.

[33] 46,652 (La. App. 2 Cir. 12/19/11), 80 So. 3d 740.

[34] *Id.* at 749.

[35] *Id.*

[36] Rec. Doc. 38-2 at 11–12.

[37] *Id.* at 13.

earning capacity as his former earning capacity.[38] Plaintiff contends that Augustar incorrectly considered Plaintiff's coroner position as his new "present occupation" despite the 54% reduction in pay and the fact that coroners do not practice medicine.[39]

Plaintiff also raises issues with Augustar limiting the Residual Disability benefits award due to Plaintiff being terminated from the coroner position.[40] Plaintiff contends that Augustar reasoned that Plaintiff's termination was voluntary, even though there is no dispute that he is totally disabled from his own occupation as a board-certified emergency room physician.[41] Plaintiff avers that Louisiana caselaw establishes that an insured, who ceases performing the occupation for which he was trained due to his disability or delays his claim, does not undermine his claim for total disability merely by obtaining a lesser job or lesser salary.[42]

Plaintiff explains that Louisiana Revised Statute § 22:1821(A) controls the payment and timing of payment for health and accident contracts, stating that all claims shall be paid not more than 30 days from the date upon which written notice and proof of claim are furnished to the insurer, unless just and reasonable grounds exist.[43] Plaintiff contends that reasonable grounds for nonpayment beyond 30 days do not exist here.[44]

Plaintiff seeks coverage from the last day of his employment as an emergency medicine physician on July 25, 2022 through March 25, 2026, in the amount of $8,000 per month.[45] Plaintiff

---

[38] *Id.* at 14.

[39] *Id.* at 14–15.

[40] *Id.* at 15.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 19.

[44] *Id.* at 20.

[45] *Id.* at 21.

also seeks amounts under the cost-of-living rider, as well as statutory penalties, for a total amount of $709,313.26.[46]

**2. Augustar's Arguments in Opposition to the Motion**

Augustar argues that Plaintiff has not proven his summary judgment burden and the motion should be denied.[47] Augustar contends that it never impermissibly narrowed the policy's coverage or violated Louisiana law, rather, Augustar maintains that it fulfilled its contractual obligation by denying Plaintiff's claim for Total Disability benefits and awarding payment of Residual Disability benefits.[48] Augustar avers that the policy required an analysis of Plaintiff's occupation as of the time Plaintiff claimed disability, at which time Plaintiff was working as Chief Deputy Coroner.[49] It is Augustar's position that Plaintiff's medical condition did not impair his capacity to perform the position of Chief Deputy Coroner, and therefore, it rightfully denied Plaintiff's claim for Total Disability benefits.[50]

Augustar states that the policy defines "Total Disability" to mean that, "as a result of Sickness or Injury, you are not able to perform the substantial and material duties of your Regular Occupation."[51] Augustar further explains that the policy defines "Your Regular Occupation" as "the occupation … in which you are regularly engaged at the time you become Totally Disabled.

---

[46] *Id.*

[47] Rec. Doc. 43 at 1–2.

[48] *Id.* at 2.

[49] *Id.*

[50] *Id.*

[51] *Id.*

If your regular occupation is limited to a Board-Certified Specialty within the scope of your degree or license, we will deem that Specialty to be your occupation."[52]

While Plaintiff's motion references the phrase "present occupation," Augustar contends this phrase does not appear in the policy or in Augustar's claim-decision letter.[53] Augustar submits that the policy also includes a Residual Income Rider, which requires that the insured must be "working."[54] Augustar contends that the Residual Income Rider does not ask whether the insured left work voluntarily or involuntarily.[55] Augustar avers that, like most disability policies, the question under the policy is whether the insured is impaired from working due to "Injury or Sickness."[56]

Augustar argues that Plaintiff's job as Chief Deputy Coroner forecloses Plaintiff's request for summary judgment.[57] Augustar explains that Plaintiff reduced his hours as an emergency room physician in 2021, yet Plaintiff made no claim for disability benefits until 2024.[58] Augustar explains that Plaintiff worked as Chief Deputy Coroner from 2021 through 2024, worked 50 to 60 hours a week, and earned around $200,000 a year.[59] Thus, Augustar asserts that Plaintiff's job as a Chief Deputy Coroner was an undisputed full time occupation.[60]

---

[52] *Id.* at 2–3.

[53] *Id.* at 3.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at 3–4.

[60] *Id.*

Augustar explains that Plaintiff submitted his disability claim shortly before his term as Chief Deputy Coroner ended.[61] Augustar states that the initial investigation did not clearly disclose when Plaintiff's disability began.[62] Augustar contends that on May 9, 2024, it made a written request for the following information from Plaintiff: (1) written clarification of what specific date Plaintiff was claiming Residual Disability began; and (2) written clarification of why Plaintiff was claiming Total Disability as of September 1, 2022, yet indicated he last worked in the emergency department in July 2022.[63] Augustar explains that it then received a report from Plaintiff's treating provider who indicated that Plaintiff's total impairment did not begin until November 13, 2023, and he was only partially impaired from November 2, 2022 to November 13, 2023.[64]

Augustar states that it then updated its May 9th letter and requested: (1) written clarification of what specific dates Plaintiff was claiming Residual Disability began and ended and why the dates of partial impairment Plaintiff's treating physician documented differed from what Plaintiff reported as to when he originally reduced his hours in the emergency department; and (2) written clarification of why Plaintiff was claiming Total Disability as of September 1, 2022, yet he last worked in the emergency department on July 25, 2022, and Plaintiff's treating physician certified a period of Total Disability didn't begin until November 13, 2023.[65] Augustar contends that Plaintiff's counsel responded by letter dated June 17, 2024, stating that "[m]y client's disability became complete, and remains so, since July, 2022… He is claiming total disability from that date

[61] *Id.* at 4.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at 5.

forward…" and "I hope this letter provides clarification as to why [Plaintiff] is claiming a July, 2022 disability date… [Plaintiff's] disability…began on July 25, 2022…"[66]

Augustar avers that Plaintiff's counsel made no claim for Residual Disability benefits and stated unambiguously that he wanted Total Disability benefits from July 2022 forward, and thus, Augustar evaluated his claims as of that date.[67] Augustar agrees that Plaintiff was impaired from working as an emergency room physician but notes that he also continued to work in his dual occupation of Chief Deputy Coroner beyond July 25, 2022.[68] Thus, Augustar argues Plaintiff did not satisfy the definition of Total Disability because he continued to perform some of the substantial and material duties of his occupation.[69] Augustar contends that it determined Plaintiff was eligible for Residual Disability benefits, but also found that Plaintiff's eligibility for those benefits ended when Plaintiff stopped working in March 2024 for a reason unrelated to Sickness or Injury.[70]

Augustar argues that Plaintiff is not entitled to judgment as a matter of law on the breach of contract claim.[71] Augustar contends that Plaintiff seeks coverage from the last day of his employment as an emergency medicine physician on July 25, 2022 through March 25, 2026, but Plaintiff offers no evidence from which a reasonable factfinder could find that Plaintiff was totally disabled from July 25, 2022 through March 25, 2026.[72]

---

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at 5–6.

[70] *Id.* at 6.

[71] *Id.* at 7.

[72] *Id.* at 8.

Augustar contends that the policy entitles Plaintiff to Total Disability benefits only upon a showing that, as a result of sickness or injury, he was not able to perform the substantial and material duties of his Regular Occupation, which the policy defines as "the occupation (or occupations if more than one) in which you were regularly engaged at the time you become Totally Disabled."[73] While Plaintiff claims to have been Totally Disabled as of July 25, 2022, when he was no longer able to work in emergency medicine, Augustar contends Plaintiff was undisputedly still working as Chief Deputy Coroner, and it is undisputed that Plaintiff's term as Chief Deputy Coroner ended on March 25, 2024, for reasons unrelated to a sickness or injury.[74] Augustar avers that Plaintiff cannot show entitlement to Total Disability benefits at any point beyond July 25, 2022, because he never submitted timely proof that he became unable to perform the substantial and material duties of the occupation in which he was regularly engaged at the time of his claimed disability.[75]

While Plaintiff argues that the policy is ambiguous because of the term "present occupation," Augustar contends that the policy does not contain the term "present occupation."[76] As it relates to the interpretation of "Regular Occupation," Augustar states that the policy dictates that the insured's occupation will be "deemed" to be a Board Certified Specialty.[77] Augustar explains that the "deeming" provision only applies if the insured's "Regular Occupation" is limited to a Board Certified Specialty within the scope of the insured's degree or license.[78] Augustar

---

[73] *Id.* at 8–9.

[74] *Id.* at 9.

[75] *Id.*

[76] *Id.*

[77] *Id.* at 11.

[78] *Id.*

contends that Plaintiff's occupation is not determined by his specialty certification but by whether he limited his practice to that specialty at the time of his disability.[79] Augustar asserts that at the time of his alleged disability, Plaintiff's occupation was not limited to an emergency room physician practice so his board certification does not determine his Regular Occupation.[80] Augustar avers that Plaintiff's assumption that his Regular Occupation is defined as his role as emergency room physician is flawed.[81]

Augustar asserts that the policy must be enforced as written.[82] Augustar maintains that no part of its decision was based on an assessment that Plaintiff could engage in any employment or occupation.[83] Augustar avers that it evaluated the claim in light of the policy's Regular Occupation Rider and determined that Plaintiff had dual occupation, part-time emergency room physician and full-time Chief Deputy Coroner.[84] Augustar explains that Plaintiff's undisputed capacity to continue to work as Chief Deputy Coroner foreclosed his claim for Total Disability benefits under the Regular Occupation Rider.[85]

Augustar argues that Plaintiff's reliance on Louisiana Revised Statute § 22:990 is misplaced because, as Fifth Circuit authority confirms, Augustar's policy complies with the statute.[86] Augustar maintains that the policy and interpretation of "Total Disability" does not

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.* at 12.

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.* at 13.

violate the restrictions set out in Louisiana Revised Statute § 22:990(B).[87] Augustar contends that this case concerns a "Regular Occupation" definition, which is subject to the requirements of Louisiana Revised Statute § 22:990(D).[88] Augustar points out that Section 22:990(D) states, "[a]n insurer may specify the requirement of the complete inability of the individual to perform all of the substantial and material duties of his regular occupation…"[89]

Augustar contends that this case is akin to *House v. American United Life Insurance Co.*[90] and *Raymond v. UNUM Group,*[91] wherein the Fifth Circuit found that policies with identical language complied with Louisiana law.[92] Augustar avers that the caselaw cited by Plaintiff is inapplicable here because Augustar did not impose a rule of "absolute helplessness" to find Total Disability.[93] Augustar argues that none of the cases cited by Plaintiff present a scenario where the insured continued working in the same occupation both before and after the date of his claimed disability, like Plaintiff here.[94] In contrast, Augustar points out that in each of the cases cited by Plaintiff, the insured was not able to continue to perform his pre-disability occupation after the date of disability.[95] Augustar asserts that Plaintiff's claim was denied because Plaintiff could

---

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] 449 F. 3d 443 (5th Cir. 2007).

[91] 2024 WL 4579607 (5th Cir. 2024).

[92] Rec. Doc. 43 at 14.

[93] *Id.* at 15.

[94] *Id.*

[95] *Id.*

continue working in his occupation as Chief Deputy Coroner both before and after his claimed date of disability.[96]

While it is Plaintiff's position that there is no specific date that the disability began, Augustar contends that the policy requires a date of disability.[97] Augustar avers that Plaintiff provided the date of disability in response to Augustar's inquiry.[98] Augustar argues that Plaintiff offers no evidence to contest the July 25, 2022 disability date, and he cannot obtain summary judgment by suggesting that a date of disability does not exist.[99]

As is relates to Plaintiff's damages calculation, Augustar argues that Plaintiff offers no evidence to corroborate the calculation provided.[100] Augustar contends that Plaintiff has not shown that he was Totally Disabled on July 25, 2022, let alone for four years through March 2026.[101] Augustar further argues that Plaintiff has not shown he meets the criteria for the Cost-of-Living Rider because he fails to show he remained "Totally Disabled for more than 12 months."[102] Augustar avers that Plaintiff incorrectly assumes that the payment increases are compounded annually, when the policy provides that the Cost-of-Living Rider "will increase the amount of the Income to be under the policy each year by 4% of the income payable at the start of your Total Disability."[103] Augustar submits that Plaintiff's calculation ignores the Residual Disability benefits

---

[96] *Id.*

[97] *Id.* at 17.

[98] *Id.* at 18.

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at 19.

[103] *Id.*

already paid by Augustar, which is mutually exclusive to the Total Disability benefits.[104] Augustar contends that Plaintiff also ignores the 90-day waiting period set out in the policy.[105]

Augustar further argues that Plaintiff is not entitled to judgment as a matter of law on his statutory penalties claim because Plaintiff offers no evidence that Augustar's decision to pay only Residual Disability benefits through March 24, 2024, was arbitrary and capricious.[106] Augustar asserts that Plaintiff has not met his burden of proving the absence of a genuine dispute of material fact.[107]

### *B. Augustar's Motion for Summary Judgment*

#### 1. Augustar's Arguments in Support of the Motion

Augustar moves for summary judgment in its favor on the claims for breach of contract and statutory penalties and fees.[108] Augustar argues that: (1) no reasonable factfinder could find that Augustar breached the underlying insurance policy and caused harm to Plaintiff; and (2) no reasonable factfinder could find that Augustar's actions were clearly arbitrary and capricious, lacking just and reasonable grounds.[109]

Augustar explains, to establish Residual Disability the policy requires proof that: (1) Plaintiff is "not Totally Disabled"; (2) Plaintiff is "working"; (3) Plaintiff is "receiving care from a physician which is appropriate for the sickness or injury causing disability;" and (4) "[d]ue solely to Injury or Sickness and apart from all other causes…[f]or and during the entire Waiting Period"

---

[104] *Id.*

[105] *Id.*

[106] *Id.* at 20.

[107] *Id.* at 22.

[108] Rec. Doc. 40-1 at 1.

[109] *Id.*

and the following "six months," Plaintiff is "not able to do one or more of the substantial and material duties of [his] regular occupation" or "is able to the substantial and material duties of [his] regular occupation but for less time than is normally required for those duties;" and (5) Plaintiff lost income as a result.[110]

As it relates to the breach of contract claim, Augustar argues Plaintiff cannot establish Total Disability.[111] While Plaintiff opines that his "regular occupation" was his position as an emergency room physician, Augustar contends that Plaintiff's occupation is that which Plaintiff was regularly engaged in at the time he became Totally Disabled.[112] Augustar states that Plaintiff claims he became Totally Disabled no earlier than July 25, 2022, however, Augustar avers that Plaintiff made several inconsistent statements regarding when he claimed to be Totally Disabled.[113] Augustar explains that as of July 25, 2022, Plaintiff was working as a full-time Chief Deputy Coroner and a part-time emergency room physician.[114] Augustar asserts that it correctly determined that Plaintiff had a dual occupation.[115]

Augustar argues that Plaintiff's continued work as a Chief Deputy Coroner foreclosed a finding of Total Disability but allowed for a Residual Disability payment.[116] Augustar contends that it is undisputed that Plaintiff could continue his work in the Coroner's Office, and no sickness or injury limited his ability to perform the duties of that occupation.[117] Augustar avers that because

[110] *Id.* at 4–5.

[111] *Id.* at 14.

[112] *Id.*

[113] *Id.* at 15.

[114] *Id.*

[115] *Id.*

[116] *Id.*

[117] *Id.*

Plaintiff was working, but not "Totally Disabled," Augustar rightly found that Plaintiff was only due Residual Disability benefits.[118] Augustar further contends that it correctly ceased the Residual Disability benefits as of March 2024.[119] Augustar explains that the second requirement to receive benefits under the Residual Income Rider is that the insured must be working.[120] Augustar avers that because the termination of Plaintiff's position as Chief Deputy Coroner had nothing to do with a sickness or illness; Plaintiff was no longer "working" as required for Residual Disability benefits, terminating his rights to benefits as of March 24, 2024.[121]

Augustar asserts that there are no genuine disputes of material fact with respect to Plaintiff's claim for breach of contract.[122] Augustar avers that Plaintiff was not Totally Disabled because he continued to perform some of the substantial and material duties of his Regular Occupation, and therefore, Plaintiff's claim that Augustar breached the policy by failing to provide Total Disability benefits fails as a matter of law.[123]

As it relates to Plaintiff's claim for penalties and fees, Augustar reiterates that it properly paid benefits under the Residual Income Rider and owes no additional benefits under the policy.[124] Augustar contends that the undisputed evidence does not support a finding that Augustar's decision was arbitrary or capricious.[125] Augustar avers it is undisputed that it asked Plaintiff to clarify from which date he sought benefits no fewer than three times, and Plaintiff repeatedly provided that he

---

[118] *Id.* at 18.

[119] *Id.*

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.* at 19.

[125] *Id.*

was seeking benefits from July 25, 2022.[126] Augustar asserts that its determination that Plaintiff was entitled to Residual Disability benefits from July 25, 2022 through March 24, 2024 was not arbitrary and capricious.[127]

**2. Plaintiff's Arguments in Opposition to the Motion**

In opposition, Plaintiff argues that Augustar's motion must be denied under Louisiana's disability insurance statutes.[128] Plaintiff states that Louisiana Revised Statute § 22:990(C) provides, "[a] general definition of total disability in such a policy shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training, or experience and *which provides him with substantially the same earning capacity as his former earning capacity prior to the start of the disability*."[129] Plaintiff contends that Augustar's actions of treating the Chief Deputy Coroner role, wherein Plaintiff earned 54% less than his emergency medicine career, as a "Regular Occupation" violates Louisiana Revised Statute § 22:990(C).[130] Plaintiff avers that pursuant to Louisiana Revised Statute § 22:880, the underlying insurance policy should be rendered invalid.[131] Because Augustar's occupation definition ignores the earning capacity requirement set out by Louisiana law, Plaintiff asserts that Augustar's motion should be denied.[132]

---

[126] *Id.*

[127] *Id.* at 20.

[128] Rec. Doc. 42 at 9.

[129] *Id.* at 10 (emphasis added).

[130] *Id.*

[131] *Id.*

[132] *Id.* at 11.

Plaintiff points out that the underlying policy provides, "if … a term of this policy conflicts with the law of the state where you live, it is changed to comply with the law."[133] Plaintiff avers that any provision that conflicts with Louisiana Revised Statute § 22:990(C) is automatically conformed to the statute.[134]

Plaintiff argues this case is akin to *Kottle v. Provident Life & Accident Insurance Company,*[135] wherein a Louisiana appellate court rejected similar arguments, finding that "neither [insured's] work in other employment, nor the lateness of the filing of his claim prevents him from claiming policy benefits as a disabled nephrologist."[136] Plaintiff contends the court in *Kottle* also rejected the insurer's argument that disability must be measured from the time of the insured's notice of claim, finding that "the time the insured becomes disabled…does not have to coincide with the time the claim is made."[137] Plaintiff avers that he became disabled from emergency medicine, and his mitigation employment does not transform his disability occupation into Chief Deputy Coroner.[138] Plaintiff further argues other Louisiana courts have found that an insured's progressive disability was not negated by returning to work.[139]

Alternatively, Plaintiff argues the policy's occupation definition is ambiguous as applied to the facts presented.[140] Plaintiff raises issues with the provision within the policy defining "Regular Occupation" as (1) the occupation or occupations in which the insured is regularly

---

[133] *Id.*

[134] *Id.* at 12.

[135] 34,099 (La. App. 2 Cir. 12/15/00), 775 So. 2d 64.

[136] Rec. Doc. 42 at 12–13.

[137] *Id.* at 13 (citing *Kottle,* 775 So. 2d at 76).

[138] *Id.*

[139] *Id.* at 14.

[140] *Id.* at 15.

engaged at the time of disability and (2) "if your Regular Occupation is limited to a Board Certified Specialty within the scope of your degree or license, we will deem that Specialty to be your occupation."[141] Plaintiff contends the relationship between these two sentences is ambiguous, and a reasonable insured would misunderstand the meaning of the provision.[142] According to Plaintiff, Augustar's own corporate designee acknowledged during a deposition that the dual-sentence structure creates an ambiguity problem in application.[143] Plaintiff contends that any ambiguity must be resolved in Plaintiff's favor, as required by Louisiana law.[144]

Even assuming Augustar's interpretation of "occupation" has merit, Plaintiff asserts the interpretation must still be rejected because it renders the separately purchased Regular Occupation Rider commercially illusory, a result rejected by Louisiana courts.[145] Plaintiff cites Augustar's corporate representative's testimony that there is no minimum dollar earning requirement, no education minimum, or a minimum skill level for a job to qualify as a second regular occupation.[146] Plaintiff argues that the separately purchased own-occupation rider provides marginal protection to any physician who acts responsibility and attempts to mitigate damages.[147]

Plaintiff asserts that, on the policy application, Plaintiff disclosed a single occupation, namely emergency medicine, and Augustar accepted and underwrote the Regular Occupation Rider on that basis.[148] It is Plaintiff's position that Augustar cannot now narrow the policy

---

[141] *Id.*

[142] *Id.* at 15–16.

[143] *Id.* at 16.

[144] *Id.*

[145] *Id.* at 17.

[146] *Id.*

[147] *Id.* at 17–18.

[148] *Id.* at 18.

language to extinguish protection based on subsequent, mitigation employment.[149] Plaintiff avers that an interpretation of the Regular Occupation Rider that leaves it without meaningful content must be rejected.[150]

As it relates to the claim for penalties and fees for an alleged violation of Louisiana Revised Statute § 22:1821(A), Plaintiff contends that the Louisiana Supreme Court has long held that an insurer who misinterprets its own policy cannot escape penalties by invoking a good faith disagreement.[151] Plaintiff asserts that Augustar's denial of Total Disability coverage lacked just and reasonable grounds because: (1) Augustar never performed an earning-capacity analysis as required by Louisiana Revised Statute § 22:990(C); (2) Augustar never addressed *Kottle* or the Louisiana jurisprudential protection for mitigating insureds; (3) Augustar never investigated the qualifications required to become a coroner; and (4) Augustar operated under an occupational definition that its own representative admitted has no meaningful floor.[152]

Plaintiff reiterates that he is seeking a total of $709,313.26, plus attorney's fees.[153] Plaintiff explains that this figure does not account for cost-of-living adjustments under the Cost-of-Living Rider, which provides for a 4% annual increase in Total Disability income for each year of disability beyond the first year.[154] Plaintiff asserts that Augustar's motion should be denied, and Plaintiff's motion should be granted.[155]

---

[149] *Id.*

[150] *Id.* at 19.

[151] *Id.*

[152] *Id.* at 20.

[153] *Id.*

[154] *Id.* at 21.

[155] *Id.* at 22.

**3. Augustar's Arguments in Further Support of the Motion**

In further support of the motion, Augustar asserts that the policy is not ambiguous.[156] Augustar reiterates that Plaintiff becomes Totally Disabled when he cannot perform the substantial and material duties of his regular occupation, which is the occupation or occupations Plaintiff is regularly engaged in at the time he becomes Totally Disabled.[157] Augustar explains that when, as here, an insured's regular occupation consists of both a specialty and an additional occupation, he can show Total Disability only by showing that he is Totally Disabled from the specialty and the other occupation.[158] Augustar avers that Plaintiff's occupation when he bought the policy does not constitute his Regular Occupation under the Regular Occupation Rider, and does not render the policy's terms ambiguous.[159] Augustar argues it is undisputed that it correctly denied Total Disability benefits because Plaintiff remained able to perform his substantial and material duties as Chief Deputy Coroner, and his position as Chief Deputy Coroner ended for reasons unrelated to sickness or injury.[160]

Augustar rejects Plaintiff's argument that Louisiana Revised Statute § 22:990(C) renders the underlying policy invalid.[161] Augustar contends that the instant matter differs from *Scott* because the underlying policy provides a more favorable definition of Total Disability.[162] Augustar

[156] Rec. Doc. 44 at 2.

[157] *Id.* at 2–3.

[158] *Id.* at 3.

[159] *Id.*

[160] *Id.* at 4.

[161] *Id.* at 5.

[162] *Id.* at 6.

avers that the Fifth Circuit has upheld Total Disability definitions similar to that contained in the instant policy.[163] Augustar argues that the caselaw relied on by Plaintiff is misplaced.[164]

Augustar avers that because Plaintiff fails to create a genuine dispute as to whether Augustar's decision was correct, he in turn fails to create a genuine dispute as to statutory penalties and fees.[165] Augustar contends it had no obligation to perform an "earning-capacity analysis" to the Regular Occupation Rider.[166] Augustar posits that the qualifications for the coroner position are irrelevant.[167] Augustar asserts that its motion should be granted.[168]

## **III. Legal Standard**

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[169] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[170] All reasonable inferences are drawn in favor of the nonmoving party.[171] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[163] *Id.*

[164] *Id.* at 7–8.

[165] *Id.* at 8.

[166] *Id.* at 9.

[167] *Id.*

[168] *Id.* at 10.

[169] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[170] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[171] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[172] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[173] The nonmoving party may not rest upon the pleadings.[174] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[175]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[176] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[177] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[178] The nonmoving party must set forth

[172] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[173] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[174] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[175] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[176] *Celotex Corp.*, 477 U.S. at 323.

[177] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[178] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[179]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[180] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[181]

However, "where the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial.'"[182] The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[183]

In addition, on cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.[184] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[185] Nonetheless, cross-motions for summary judgment may

---

[179] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[180] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[181] *Morris*, 144 F.3d at 380.

[182] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020).

[183] *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *1 (E.D. La. Apr. 27, 2010) (Vance, J.).

[184] *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

[185] *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.[186]

## **IV. Analysis**

Plaintiff seeks summary judgment, arguing that the policy provides Total Disability benefits because his inability to continue practicing emergency medicine rendered him totally disabled from his "Regular Occupation" as a board-certified emergency physician. Plaintiff further contends that Augustar improperly redefined his occupation by treating his position as Chief Deputy Coroner as his "present occupation," contrary to the policy language, Louisiana law, and the policy's board-certified specialty provision.

Augustar also seeks summary judgment, arguing that Plaintiff cannot establish entitlement to Total Disability benefits because the policy defines "Regular Occupation" as the occupation or occupations in which the insured was regularly engaged when he became totally disabled. According to Augustar, Plaintiff continued working full time as Chief Deputy Coroner after leaving emergency medicine and therefore continued performing substantial and material duties of his regular occupation. Augustar maintains that Plaintiff was entitled only to Residual Disability benefits while working as Chief Deputy Coroner, and those benefits ceased once Plaintiff stopped working for reasons unrelated to his medical condition.

The policy defines "Total Disability or Totally Disabled" as follows:

> You are Totally Disabled or have a Total Disability if due to Injury or Sickness:
> (a) you are not able to do the duties of any occupation which you may reasonably be expected to engage in because of education, training or experience; and
> (b) you are under a Physician's care. You do not need to be under a Physician's care on a regular basis if you can show that further recovery is not expected for you.[187]

---

[186] *Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

[187] Rec. Doc. 38-4 at 5.

The policy contains a Regular Occupation Rider which changes the definition of Totally Disabled. Under the Regular Occupation Rider, Total Disability is defined as follows: "as a result of Sickness or Injury, you are not able to perform the substantial and material duties of your regular occupation."[188] Regular Occupation is defined as "the occupation (or occupations if more than one) in which you are regularly engaged at the time you become Totally Disabled. If your regular occupation is limited to a Board Certified Specialty within the scope of your degree or license, we will deem that Specialty to be your occupation."[189]

Viewing the evidence in the light most favorable to the nonmovant on each motion, the Court concludes that several genuine disputes of material fact remain. First, the record contains conflicting evidence regarding the date on which Plaintiff became "Totally Disabled." In his claim, Plaintiff stated that this progressive vision impairment rendered him totally disabled as of July 25, 2022, when he ceased practicing emergency medicine. In his motion for summary judgment, Plaintiff contends that the date of disability is unascertainable because the condition was progressive. To the contrary, there is correspondence from Plaintiff's treating physician indicating that Plaintiff was only partially impaired until November 13, 2023. However, Total Disability under the policy is not defined by the inability to work in the occupation altogether, rather the policy requires that the insured is unable to perform the substantial and material duties of his Regular Occupation. Resolving these conflicting dates requires weighing competing evidence and drawing factual inferences regarding Plaintiff's occupational duties and his capacity to perform the substantial duties of his occupation at the relevant time. These issues cannot be resolved at the summary judgment stage.

---

[188] *Id.* at 11.

[189] *Id.*

Second, genuine factual disputes remain concerning Plaintiff's "Regular Occupation" under the policy. Plaintiff contends that his Regular Occupation should be deemed his board-certified emergency medicine specialty pursuant to the policy's specialty provision, whereas Augustar maintains that Plaintiff's Regular Occupation included his continued work as Chief Deputy Coroner. Whether the policy's board-certified specialty provision governs Plaintiff's circumstances, and how that provision interacts with the policy's definition of "Regular Occupation," cannot be resolved on the present record.

Finally, genuine disputes remain regarding whether Augustar reasonably interpreted and administered Plaintiff's claim. The parties dispute whether Augustar properly investigated conflicting disability dates and whether the benefits determination was consistent with the policy language and Louisiana law. Louisiana Revised Statute § 22:990(C) provides, "A general definition of total disability in such a policy shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training, or experience and which provides him with substantially the same earning capacity as his former earning capacity *prior to the start of the disability*."[190] A determination of whether Augustar violated Louisiana Revised Statute § 22:990(C) is dependent upon disputed factual issues concerning the onset of Plaintiff's disability, the scope of Plaintiff's Regular Occupation at that time, and whether Plaintiff's coroner position constituted an occupation providing substantially the same earning capacity. Accordingly, summary judgment is inappropriate.

---

[190] La. R.S. § 22:990 (emphasis added).

## V. Conclusion

For the foregoing reasons, the Court concludes that neither party has demonstrated entitlement to judgment as a matter of law. The record contains genuine disputes of material fact regarding the application of the policy to Plaintiff's circumstances. Specifically, factual disputes remain concerning the scope of Plaintiff's Regular Occupation, whether Plaintiff was regularly engaged in one or multiple occupations at the time he allegedly became totally disabled, whether Plaintiff's visual impairment prevented him from performing the substantial and material duties of his Regular Occupation, and whether Augustar properly classified Plaintiff's claim as one for Residual Disability benefits. These issues require the resolution of competing evidence, which is reserved for the trier of fact. Accordingly, summary judgment is inappropriate for either party.

**IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment[191] is **DENIED**.

**IT IS FURTHER ORDERED** that Augustar's Motion for Summary Judgment[192] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 20th day of August, 2026.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

[191] Rec. Doc. 38.

[192] Rec. Doc. 40.